**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 11-163-DLB**

**ANGELA MIRACLE**                                                                                   **PLAINTIFF**

**VS.**                    <u>**MEMORANDUM ORDER AND OPINION**</u>

**MICHAEL J. ASTRUE,**                                                       **DEFENDANT**
**Commissioner of Social Security**

*** *** *** ***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) requesting that the Court remand an administrative decision of the Commissioner of Social Security for further consideration and clarification. The Court, having reviewed the record and the parties' dispositive motions, **reverses and remands** the Commissioner's decision.

## 1. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Angela Miracle filed a Title XVI application for supplemental security income (SSI) as well as a Title II application for a period of disability and disability insurance benefits (DIB) on January 21, 2009. At the time of filing, Plaintiff was a high-school-educated, 39 year-old individual who had previously worked as a cook, cashier, yard worker, and shipping checker. (Tr. 120, 20-21). Plaintiff's applications alleged a disability onset date of January 6, 2009. (Tr. 119, 127). Plaintiff alleged that she has been unable to work since that time because of back pain, fibromyalgia, high blood pressure, stomach problems, anxiety and depression. (Tr. 164).

Plaintiff's claims were denied initially and again on reconsideration. (Tr. 78-79, 80-81). At Plaintiff's request, an administrative hearing was conducted on January 22, 2010, before Administrative Law Judge (ALJ) Robert King. (Tr. 44-77). On March 3, 2010, ALJ King ruled that Plaintiff is not disabled under the Social Security Act, and is, therefore, not entitled to supplemental security income or a period of disability and disability insurance benefits. (Tr. 21). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 15, 2011. (Tr. 1).

The present action was filed on June 13, 2011. (Doc. # 2). The matter has culminated in cross-motions for summary judgment. (Docs. # 10, 11). Plaintiff having filed a response to Defendant's motion (Doc. # 12), and the time to file any additional briefs having expired, the motions are now ripe for adjudication.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are to review the entire administrative record to determine whether the decision is supported by substantial evidence, but may "not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*,

49 F.3d 244, 246 (6th Cir. 1995)). An administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996). "Conversely, if the ALJ commits an error of law, the court must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds*, 424 F. App'x at 414 (6th Cir. 2011) (quoting *Kalmback v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 6, 2009, the alleged onset date. (Tr. 14). At Step 2, the ALJ determined that Plaintiff had the following severe impairments: obesity; mild degenerative disc disease and facet arthropathy at L2-3; hypertension without evidence of end organ damage; major depressive disorder; and generalized anxiety disorder. (Tr. 14). The ALJ recognized that Plaintiff was on medication for fibromyalgia, but did not include fibromyalgia among her

severe impairments. (Tr. 15). At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as that term is defined in the Social Security Regulations, with the additional physical limitation that she can only occasionally stoop and crouch. (Tr. 18). Mentally, Plaintiff is able to understand and remember instructions, and is capable of maintaining sustained concentration and persistence in the completion of tasks in a normal amount of time. (*Id.*). Plaintiff has mild difficulty relating to supervisors, coworkers, and the general public, but she can tolerate the degree of supervision customarily associated with unskilled labor. (*Id.*). Additionally, Plaintiff is able to be around coworkers during the workday, but is limited to only superficial contact with employees as well as the general public. (*Id.*). Plaintiff is also unable to work in a job that requires her to engage in intense negotiation or persuasion of others, demands high quotas or fast paced production, or involves a high degree of change in the work place. (*Id.*). Based upon these findings, the ALJ found that Plaintiff is unable to perform her past relevant work.

At Step 5, the ALJ found that Plaintiff was 39 years of age on the alleged onset date, which is defined as a younger individual. (Tr. 19). The ALJ also found that Plaintiff has at least a high school education and is able to communicate in English. Relying on the testimony of a vocational expert (VE) and considering Plaintiff's age, education, work experience and RFC, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff can perform. (Tr. 20). ALJ King therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged

4

onset date through the date of his decision.  (Tr. 21).

**C.     Analysis**

Plaintiff raises two arguments on appeal.  First, Plaintiff argues that the ALJ failed to adequately explain why he rejected Plaintiff's testimony as not credible, particularly testimony concerning symptoms attributable to fibromyalgia.  Plaintiff contends that this is an error of law warranting reversal even if the ALJ's decision is supported by substantial evidence.  Second, Plaintiff asserts that the ALJ's vocational assessment was not supported by substantial evidence because the ALJ improperly relied on the testimony of the VE in response to an inadequate hypothetical.  Each argument will be addressed in turn.

**1.     The ALJ Failed to Adequately Explain His Credibility Determination**

At Step Four, the ALJ found that Plaintiff's subjective complaints were not fully credible and that the objective medical evidence indicated that Plaintiff had the RFC to perform light work.  Plaintiff argues that the ALJ failed to sufficiently explain this credibility determination as required by 20 C.F.R. § 404.1529 and Social Security Rule 96-7p.  This failure, according to Plaintiff, constitutes an error of law warranting remand for further consideration and clarification regardless of whether the ALJ's decision is supported by substantial evidence.

Plaintiff argues that many of her symptoms and limitations are attributed to fibromyalgia. The Sixth Circuit recognizes that the cause of a disability may not necessarily be the underlying condition itself, "but rather the symptoms associated with the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. §

416.929; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992)). When disability claims are based on fibromyalgia, often the complaints of pain, stiffness, and fatigue associated with the condition are the source of the alleged disability. *Id.*

"Where the symptoms and not the underlying condition form the basis of the disability claim," the ALJ must "employ a two-part analysis in evaluating complaints of disabling pain." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (citing 20 C.F.R. § 416.929(a); *Rogers*, 486 F.3d at 247). First, the ALJ must determine "whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the alleged symptoms." *Id.* at 862-63. If the ALJ finds that such impairment exists, the ALJ must then consider the intensity, persistence and limiting effects of the symptoms on the claimant's ability to perform basic work activities. *Id.* at 863.

The reviewing court must give great weight and deference to the ALJ's assessment of a witness's credibility, including that of the claimant. *Id.* (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). "However, the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility." *Id.* (internal citations and quotations omitted). If the ALJ finds that the claimant's subjective complaints are not supported by objective medical evidence, the ALJ must consider the claimant's credibility by reviewing the entire record. *Id.*

Once the ALJ has made a credibility determination, 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p require the ALJ to explain the "credibility determination in his decision with sufficient specificity as 'to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

for the weight.'" *Kalmbach*, 409 F. App'x at 863 (quoting SSR 96-7p, 1996 WL 374186, at *2 (Dec. 2, 1996)). "Blanket assertions that the claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. In cases involving claims of fibromyalgia, the need to adequately justify the credibility determination is particularly important because subjective complaints play such an important role in diagnosing and treating the condition. *Id.*

In *Kalmback v. Commissioner of Social Security*, 409 F. App'x 852 (6th Cir. 2011), the Sixth Circuit recently considered whether the ALJ provided a sufficient explanation for discounting the claimant's credibility in light of the claimant's testimony regarding symptoms attributed to fibromyalgia. After noting that the claimant had been treated for fibromyalgia, the ALJ found that the claimant's "statements concerning the intensity, persistence and limiting effects [were] not entirely credible." *Id.* at 858. The ALJ also stated that he did not doubt the claimant experienced some discomfort, but found that the claimant's subjective complaints were not entirely credibly because (1) the claimant had not undergone aggressive treatment, and the complaints were (2) unsubstantiated by the objective medical evidence and (3) inconsistent with the claimant's ordinary activities. *Id.*

In analyzing the ALJ's decision, the Sixth Circuit emphasized that the "absence of objective medical evidence to substantiate the diagnosis of fibromyalgia is basically irrelevant, and more 'aggressive' treatment is not recommended for fibromyalgia patients." *Id.* Additionally, a claimant's lifestyle choices, including her choice to disregard her treating physician's recommendations to lose weight, cannot be deemed to detract from the claimant's credibility. *Id.* at 865. The Sixth Circuit ultimately held that the decision failed

to adequately explain the credibility determination because it "did not contain specific reasons for discounting [the claimant's] credibility" and the reasons that were given were not supported by the record.[1]  *Id.*

In *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 246 (6th Cir. 2007), the Sixth Circuit addressed the same set of issues, specifically whether the ALJ properly evaluated the claimant's credibility.  Like *Kalmbach*, the claimant in *Rogers* had been diagnosed with and treated for fibromyalgia.  *Id.* at 238.  The ALJ stated that the lack of objective evidence, and the claimant's "normal reflexes" and "normal sensory testing" did not support the claimant's subjective complaints and the claimant was, therefore, not entirely credible.  *Id.* at 248.

The Sixth Circuit ruled that "the nature of fibromyalgia itself renders such a brief analysis and over-emphasis upon objective findings inappropriate."  *Id.*  By focusing on the objective evidence, the ALJ failed to consider "the lengthy and frequent course of medical treatment or nature and extent of that treatment, [and] the medications [the claimant] had been prescribed," among other possible considerations.  *Id.*  The *Rogers* Court ultimately held that "the decision in this case fails to contain specific reasons for the finding on credibility, supported by the evidence in the case record, nor is it sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to [the claimant's] statements and the reasons for that weight."  *Id.*  (internal citations and quotations omitted).

---

[1] The court also held that the credibility determination was not supported by substantial evidence. *Kalmbach*, 409 F. App'x at 865.

The ALJ's decision presently before the Court shares the same flaws as the administrative decisions considered in *Kalmbach* and *Rogers*. Much like *Kalmbach*, the ALJ found that Plaintiff was not entirely credible because (1) she had not undergone aggressive treatment, and her complaints were (2) unsubstantiated by the objective medical evidence and (3) inconsistent with her ordinary activities.[2] Despite these findings, the decision failed to adequately explain the credibility determination because it "did not contain specific reasons for discounting [the claimant's] credibility" and the reasons that were given were not supported by the record. *See Kalmbach*, 409 F. App'x at 858.

The ALJ noted that Plaintiff's "treatment has all been conservative in nature with no referrals for surgery or other aggressive measures." (Tr. 19). However, the Sixth Circuit has recognized that "aggressive treatment is not recommended for fibromyalgia patients." *Kalmbach*, 490 F. App'x at 864. Moreover, by emphasizing the conservative nature of the treatment, the ALJ failed to recognize that Plaintiff's treating physician, Dr. Charles Moore, did not recommend Plaintiff to undergo physical therapy solely because she had no insurance and could not otherwise afford it. (Tr. 418). Therefore, the ALJ erroneously over-emphasized and mischaracterized the nature of Plaintiff's treatment in choosing to discredit Plaintiff's subjective complaint. In doing so, the ALJ failed to adequately explain why Plaintiff was not entirely credible.

Second, the ALJ stated that Plaintiff's subjective complaints "are not credible to the extent they are not substantiated by objective medical evidence." (Tr. 18). "Clinical and

---

[2] It is unclear whether the ALJ considered Plaintiff's subjective complaints relative to symptoms attributed to fibromyalgia; after finding that Plaintiff's severe impairments did not include fibromyalgia at Step Two, the ALJ did not mention fibromyalgia again. Even if the ALJ considered the symptoms that may be attributed to fibromyalgia, the ALJ's decision still fails to sufficiently describe the credibility determination.

9

diagnostic examinations [of Plaintiff] have been relatively unremarkable with no documentation of any musculoskeletal or neurological abnormalities . . . ," according to the ALJ. (Tr. 19). While the ALJ noted that Plaintiff has a history of headaches, morning stiffness, muscle aches and back/joint pain, the ALJ maintained that "physical examinations remain essentially normal." (*Id.*). Additionally, an April 2009 orthopedic examination demonstrated no limitations. (*Id.*).

Much like the ALJ's consideration of Plaintiff's treatment, the ALJ also improperly over-emphasized the significance of the objective evidence and mischaracterized the record. The Sixth Circuit has recognized that, "unlike medical conditions that can be confirmed by objective medical evidence, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 244. Instead, they "manifest normal muscle strength and neurological reactions and have a full range of motions." *Id.* (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1998) (per curiam)). Therefore, the ALJ over-emphasized the significance of unremarkable clinical and diagnostic examinations and an absence of musculoskeletal, neurological, and orthopedic abnormalities because fibromyalgia cannot be detected through such examinations.

Instead, fibromyalgia may only be diagnosed by "testing a series of focal points for tenderness and . . . ruling out . . . other possible conditions through objective medical and clinical trials." *Rogers*, 486 F.3d at 244. Dr. Moore thrice reported that Plaintiff exhibited tenderness when a series of focal points were tested. Yet, the ALJ gave no indication that he considered this objective evidence at Step Four.[3] Without acknowledging this evidence,

---

[3] The ALJ did mention the tender points test in his discussion at Step Two.

the ALJ mischaracterized the evidentiary record by stating that "physical examinations remain essentially normal," despite a history of symptoms attributed to fibromyalgia. (Tr. 19).

Finally, the ALJ cited Dr. Moore's August 2009 treatment record to support his credibility determination. This record contained a report from Plaintiff that her pain medications allow her to care for herself, perform activities of daily living and sleep. Other than merely stating the contents of this report, the ALJ failed to explain how the report impacted his credibility determination.

If the ALJ cited this record for the purpose of showing that Plaintiff's report to her treating physician was inconsistent with her testimony, he did not make that point clear. Furthermore, the ALJ did not explain how this report was inconsistent with Plaintiff's testimony, which amounts to a failure to provide specific reasons for the finding on credibility and warrants remand. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788-89 (6th Cir. 2009).

Moreover, the Court's review of the evidentiary record reveals that Plaintiff's complaints to her treating physician were consistent with her testimony at the administrative hearing. In February 2009, Plaintiff reported to Dr. Moore that she experienced pain and weakness throughout her body. As a result, Plaintiff found it difficult to take care of her home, shop or care for herself, although her pain medications allowed for "some increases" in activity. (Tr. 251). At her next appointment in May 2009, Plaintiff reported that she still experienced pain and weakness all over, as well as general weakness and an inability to sleep. She also reported that pain medications allowed her to care for herself, do house work, and travel outside of her house to some extent. At her November 2009 appointment,

Plaintiff indicated that she continued to experience pain all over, but the pain medications allowed her to complete "some" activities of daily living. (Tr. 237).

Plaintiff's testimony at the administrative hearing was generally consistent with her statements to Dr. Moore. She testified that she was able to dress herself, except that pain in her arms prevented her from putting on her bra. She also testified that she tries to clean dishes, but has to take breaks because of pain and fatigue. Additionally, her ability to prepare meals for herself is limited to pouring herself a bowl of cereal for breakfast. Plaintiff also indicated that she is able to take a shower, but is unable to take a bath because she cannot get in and out of the bathtub. This testimony is ultimately consistent with her reports to Dr. Moore; pain medication allows her to perform some activities of daily living and provide basic care for herself. However, Plaintiff consistently indicated that she is unable to completely care for herself because of pain, weakness and fatigue.

As a result of the aforementioned shortcomings, the ALJ's decision "fails to contain specific reasons for the findings on credibility, supported by the evidence in the record" and the weight of the relevant evidence. *Rogers*, 483 F.3d at 248. Accordingly, the is remanded to the Commissioner for further consideration and clarification.

### 2. It is Premature to Consider the Appropriateness of the ALJ's Hypothetical Question Posed to the Vocational Expert

Plaintiff also argues that the ALJ erred in relying on the Vocational Expert's (VE) response to an improper hypothetical. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504,

516 (6th Cir. 2010). The Court will not consider this argument at this time because the case is remanded to the Commissioner for further consideration and clarification regarding Plaintiff's credibility. Until such clarification is provided, the Court cannot determine whether the ALJ's hypothetical accurately portrayed Plaintiff's physical and mental impairments.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that this case must be remanded so that the ALJ may properly consider Plaintiff's credibility in light of her symptoms associated with fibromyalgia and provide an adequate explanation of the credibility determination. Accordingly,

**IT IS ORDERED** as follows:

1. Plaintiff's motion for summary judgment (Doc. # 10) be, and it hereby is, **GRANTED**

2. Defendant's motion for summary judgment (Doc. # 11) be, and it hereby is, **DENIED;** and

3. This action be, and it is, hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately explain the determination regarding Plaintiff's credibility.

This 18th day of January, 2012.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-11-163-MiracleMOO.wpd